UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MAHER GHANIM,                              )<br>                                                          )<br>        Plaintiff,                                   )<br>                                                          )<br>    vs.                                                )         Case No. 4:12CV1818SNLJ<br>                                                          )<br>JANET NAPOLITANO, Secretary of the  )<br>U.S. Department of Homeland Security, and )<br>DAVID DOUGLAS, District Director of the  )<br> U.S. Citizenship and Immigration Services,  )<br>                                                          )<br>        Defendants.                              )   | |

## MEMORANDUM

Plaintiff has filed this action for judicial review of the denial of his application for naturalization by defendants Secretary of the U.S. Department of Homeland Security and District Director David Douglas of the U.S. Citizenship and Immigration Services (USCIS).  Plaintiff seeks a hearing on the matter or, alternatively, that the Court approve his application for naturalization.  The case  is before the Court on the defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgment, filed March 1, 2013.  Document [8].  On June 27, 2013, the Court elected to address the motion as a motion for summary judgment and allowed the parties time to file supplemental briefs.  Ct. Order [17].  All responsive pleadings have now been filed and the matter is ripe for disposition.

**Legal Standard**

Pursuant to § 310 of the Immigration and Nationality Act (INA) and at the request of the applicant, a reviewing court shall conduct a "hearing de novo" on the application.  8 U.S.C. §

1421(c). The phrase "hearing de novo," however, does not always necessitate a bench trial or evidentiary hearing, and summary judgment is appropriate where the parties have fully briefed the issues before the Court. *See Abdi v. USCIS*, Civ. No. 12-1641 (RHK/SER), 2013 WL 562885, at *3 n.6 (D. Minn. 2013); *Chan v. Gantner*, 464 F.3d 289, 295-96 (2d Cir. 2006).

The appropriate standard for consideration of all motions for summary judgment is as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (internal citations and quotations omitted); *see also, Jackson v. United Parcel Service, Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2011) (citing *Torgerson*, *supra*).

**Factual Background**

Plaintiff, a citizen of Palestine and permanent resident alien of the United States, filed a petition for naturalization with USCIS in September 2007. (Gov't Ex. B, ¶ 1). The September 2007 application was approved and plaintiff was to be naturalized in December 2010. *Id*. However, plaintiff was not naturalized at that time and his application was put on hold because

after the approval of the September 2007 application but before his oath ceremony, plaintiff was arrested for domestic assault. *Id*. According to the charging documents, in December 2008, plaintiff was involved in an incident with his now ex-wife wherein he "knowingly caused physical contact with [his spouse] knowing that such person would regard such contact as offensive." (Gov't Ex. P). In connection with the arrest, an ex parte order of protection was issued against plaintiff for the protection of his ex-wife. (Gov't Ex. N, p.2). That order was renewed multiple times and converted to a full order of protection in a consent judgment entered in November of 2009 before finally expiring in December of 2011. *Id.* In May 2010, plaintiff pled guilty in the Circuit Court of St. Louis County to Domestic Assault in the Third Degree under sec. 565.074, RSMo., a class A misdemeanor, and was placed on two (2) years probation. (Gov't Ex. D, E). Plaintiff was also placed on a thirty day electronic monitoring program and ordered to complete forty hours of community service. (Gov't Ex. E). In July 2010, plaintiff's September 2007 application for naturalization was ultimately denied because USCIS determined that due to the domestic assault charge, plaintiff lacked "good moral character" as required for naturalization by federal regulations promulgated under section 316 of the INA. (Gov't Ex. B); 8 U.S.C. § 1427(a)(3).

     Plaintiff completed probation in June 2011 and filed a second application for naturalization in August 2011. (Gov't Ex. I, K). USCIS denied the August 2011 application, again finding that plaintiff lacked good moral character. (Gov't Ex. K, p.2). USCIS based its finding on plaintiff's domestic assault charge as well as a 2007 charge for littering (amended from Sale of Alcohol to a Minor), the protective order issued against the plaintiff, a failure to substantiate court-ordered child support, and a failure to explain wage garnishment. (Gov't Ex. K, p.3).

Plaintiff filed with USCIS a request for a hearing and review of the denial of the August 2011 application and was interviewed regarding the matter.  (Gov't Ex. N).  USCIS informed plaintiff in December 2012 that he had not overcome the basis for the denial of the August 2011 application.  (Gov't Ex. N, p.3).  Plaintiff was informed of his right, pursuant to 8 U.S.C. § 1421(c), to challenge the December 2012 decision in federal court and he timely filed a petition for review on January 16, 2013.

**Applicable Law**

Defendants assert that plaintiff's conviction for domestic assault statutorily precludes him from establishing the requisite good moral character either because (1) sec. 565.074, RSMo. is a "Crime Involving Moral Turpitude" (CIMT) or, (2) plaintiff's domestic assault constitutes an "unlawful act" committed during the statutory period which reflects adversely on moral character.  Plaintiff contends that sec. 565.074, RSMo. is not a CIMT and further, that no other legal bar exists which would prevent him from establishing good moral character in a full hearing before the Court.

The INA and its corresponding Federal Regulations govern the naturalization process. "No alien has the slightest right to naturalization" unless all statutory requirements are met. *Fedorenko v. United States*, 449 U.S. 490, 506 (1981) *quoting United States v. Ginsberg*, 243 U.S. 472, 475 (1917).  A naturalization applicant bears the burden of showing his eligibility and compliance with all naturalization requirements.  *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967); 8 C.F.R. § 316.2(b).  Any doubts about eligibility should be resolved in favor of the United States and against the applicant.  *Id*.; *see also United States v. Manzi*, 276 U.S. 463, 467 (1928).

Section 316 of the INA provides that "[n]o person...shall be naturalized unless such applicant...during all the periods referred to in this subsection has been and still is a person of good moral character...." 8 U.S.C. § 1427(a)(3). The statutory period for which an applicant must show good moral character begins five (5) years prior to the date on which the application for naturalization was filed and runs through the date the applicant is naturalized. 8 U.S.C. § 1427(a). Good moral character is evaluated on a case-by-case basis, taking into account the "standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2).

The federal regulations provide guidance as to specific conduct that will constitute a lack of good moral character. Relevant here are two provisions of 8 C.F.R. § 316.10. First, an applicant lacks good moral character if he has been convicted of a CIMT during the statutory period. 8 C.F.R. § 316.10(b)(2)(i). Second, absent a showing of extenuating circumstances, an applicant lacks good moral character if, during the statutory period, he has committed "unlawful acts" that adversely reflect on moral character. 8 C.F.R. § 316.10(b)(3)(iii); *see also United States v. Jean-Baptiste*, 395 F.3d 1190, 1193 (11th Cir. 2005) (recognizing § 316.10(b)(3)(iii) as a "catch-all"). If the reviewing court or agency determines an applicant lacks good moral character under either provision, he may not naturalize.

**Crimes Involving Moral Turpitude**

Plaintiff pled guilty to third-degree domestic assault under sec. 565.074, RSMo. which states in relevant part:

> A person commits the crime of domestic assault in the third degree if the act involves a family or household member, including any child who is a member of the family or household, as defined in section 455.010 and:
>
> (1) The person attempts to cause or recklessly causes physical injury to such family or household member; or

5

(2) With criminal negligence the person causes physical injury to such family or household member by means of a deadly weapon or dangerous instrument; or

(3) The person purposely places such family or household member in apprehension of immediate physical injury by any means; or

(4) The person recklessly engages in conduct which creates a grave risk of death or serious physical injury to such family or household member; or

(5) The person knowingly causes physical contact with such family or household member knowing the other person will regard the contact as offensive; or

(6) The person knowingly attempts to cause or causes the isolation of such family or household member by unreasonably and substantially restricting or limiting such family or household member's access to other persons, telecommunication devices or transportation for the purpose of isolation.

Sec. 565.074, RSMo. If the statute is a CIMT, then plaintiff, having been convicted during the statutory period, lacks good moral character and is ineligible for naturalization. 8 C.F.R. § 3116.10(b)(2)(i). To establish whether a particular offense is a CIMT, the Eighth Circuit follows a three-step methodology set forth by the United States Attorney General in the administrative decision *Matter of Silva-Trevino*, 24 I&N Dec. 687 (A.G. 2008); *Bobadilla v. Holder*, 679 F.3d 1052, 1057 (8th Cir. 2012) (deferring to the *Silva-Trevino* methodology as a reasonable interpretation of the INA).

Step one involves a categorical inquiry into the statutory language alone, rather than the applicant's underlying conduct, and analyzes whether there is a "realistic probability, not a theoretical possibility" that the statute could be applied to conduct that does *not* involve moral turpitude. *Bobadilla*, 679 F.3d at 1055 (quoting *Silva-Trevino* at 697-98). This realistic probability standard focuses on the criminal statute's "actual scope and application...asking whether...any actual (as opposed to hypothetical) case exists in which the relevant criminal statute was applied to conduct that did not involve moral turpitude." *Silva-Trevino*, 24 I&N Dec.

6

at 697 (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2008)).  If the reviewing court or agency determines that all conduct for which there is a realistic probability of conviction under the statute involves moral turpitude, then the inquiry ends and the statute is categorically a CIMT.  *Bobadilla*, 679 F.3d at 1055.  If the statute is not categorically a CIMT, then step two employs a modified categorical approach to consider whether the applicant's record of conviction suggests a crime that *in fact* involved moral turpitude.  *Id*. at 1056.  The step two analysis is limited to specific documents in the record of conviction, such as the indictment, charging documents, judgment of conviction, or signed guilty plea.  *Id*.  Finally, if the record of conviction does not resolve the inquiry, courts may look to "any additional evidence...necessary or appropriate" to resolve the moral turpitude question.  *Id*.

      Although undefined in the statute, moral turpitude consists of "act[s] of baseness, vileness, or depravity in the private and social duties that people owe each other or society in general."  *Godinez-Arroyo v. Mukasey*, 540 F.3d 848, 851 (8th Cir. 2008).  The intent required under the statute of conviction is critical to a finding of moral turpitude.  *Hernandez-Perez v. Holder*, 569 F.3d 345, 348 (8th Cir. 2009). The act must be "accompanied by a vicious motive or corrupt mind," requiring some form of scienter.  *Bobadilla*, 679 F.3d at 1054.  *See also*, *Matter of Perez-Contreras*, 20 I&N Dec. 615, 618 (BIA 1992) (finding that moral turpitude may inhere where knowing or intentional conduct is an element of the offense, but not where the *mens rea* cannot be discerned from the statute).

      Simple assault and battery offenses generally do not involve moral turpitude for purposes of immigration law.  *See Reyes-Morales v. Gonzales*, 435 F.3d 937, 945 n.6 (8th Cir. 2006) ("simple assault does not require the offender to act with a vicious motive or corrupt mind"); *Matter of Julio Cesar Ahortalejo-Guzman*, 251 I&N Dec. 465, 972 (BIA 2011); *see also*, *Brehe*

7

*v. Missouri Dept. Elementary & Secondary Educ.*, 213 S.W.3d 720, 726-27 (Mo. App. 2007). However, the Board of Immigration Appeals (BIA) has found that an assault offense can be classified as a CIMT when it necessarily involves "some aggravating factor that indicates the perpetrator's moral depravity, such as the use of a deadly weapon or the infliction of serious injury on a person whom society views as deserving of special protection, such as children, domestic partners, or peace officers." *Ahortalejo-Guzman*, 251 I&N at 465.

Here, plaintiff argues that there exists a realistic probability that sec. 565.074, RSMo. can be applied to assaults that do not involve moral turpitude.  Specifically, he claims that the statute does not categorically require physical injury because subsection (5) -- the subsection to which he plead guilty -- refers merely to offensive physical contact.  Sec. 565.074(5), RSMo.

For purposes of the step one categorical inquiry, plaintiff was charged with and pled guilty to sec. 565.074(5), RSMo. for knowingly causing "offensive" contact to his ex-wife. (Gov't Ex. P).  To be sure, in the context of assault crimes, offensive contact need not involve physical injury, and thus, in theory, sec. 565.074(5), RSMo. could be violated by minimal, nonviolent touching.  *See* sec. 565.070, cmt, RSMo.; Restatement (Second) of Torts § 18 cmt. c. Plaintiff is correct, then, that such minimal nonviolent contact ordinarily would not involve moral turpitude.  *In re Sanudo*, 231 I&N Dec. 968, 972 (BIA 2006); *Esparza-Rodriguez v. Holder*, 699 F.3d 821, 825 (5th Cir. 2007).  However, the impetus of the realistic probability inquiry is not whether the statute *in theory* can encompass conduct not involving moral turpitude, but rather, whether the statute, *in application*, applies to such conduct.  *Bobadilla*, 679 F.3d at 1055.

Although it seems that in Missouri, prosecutions for offensive contact assaults without bodily injury are rare, *see* 32 Mo. Prac., Mo. Crim. Law § 18.7, sec. 565.074(5), RSMo. appears to be the least serious category of domestic assault possible under Missouri law.  Apart from the

8

presence of a domestic relationship, none of the aggravating circumstances recognized by the BIA as sufficient for a finding of moral turpitude are present in sec. 565.074(5), RSMo. *See Ahortalejo-Guzman*, 251 I&N at 465, *supra*.  In contrast, a number of other Missouri assault statutes do indeed encompass such aggravating circumstances.  Domestic assault with a deadly weapon is an element of sec. 565.074(2), RSMo. when committed negligently and is a class C felony under sec. 565.073(1), RSMo. when committed knowingly.  Similarly, the reckless causing of serious bodily injury is a class C felony under sec. 565.073(2), RSMo.  The intentional causing of serious bodily injury a class A felony under sec. 565.072(1), RSMo.  Notably, the causing of serious bodily injury is not an element of any subsection of sec. 565.074, RSMo., the statute under which plaintiff was charged.  Furthermore, offensive contact of a sexual nature is addressed by Missouri's sexual misconduct statutes.  *See* sec. 566.095, 566.093, RSMo.; 32 Mo. Prac., Mo. Crim. Law 18.7.  Thus, without engaging in a hypothetical analysis of conduct that could possibly violate plaintiff's statute of conviction, it appears that by virtue of the fact that any BIA-recognized aggravating circumstances are covered by other provisions, sec. 565.074(5), RSMo. is targeted at conduct with a degree of seriousness below the BIA's standard for moral turpitude.

The Government argues that, notwithstanding this conclusion, the presence of a domestic relationship in sec. 565.074(5), RSMo. is enough to qualify it categorically as a CIMT.  However, the Court concurs with the reasoning of the Ninth Circuit that, without more, the presence of a domestic relationship alone is not sufficient to transform every assault  "into a crime categorically grave, base, or depraved." *Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1060 (9th Cir. 2006).  Therefore, the Court finds that sec. 565.074(5), RSMo. is not categorically a CIMT.

Having found sec. 565.074. RSMo. not to be categorically a CIMT, the Court continues to step two and looks beyond the statute into the specific conduct underlying plaintiff's conviction

9

as evidenced by the record of conviction. The Government has entered several documents into the record that may be considered at stage two including the signed guilty plea, (Gov't Ex. D), judgment and sentence, (Gov't Ex. E), and the amended information (Gov't Ex. P). These documents indicate that plaintiff was charged with and pled guilty to domestic assault under sec. 565.074(5), RSMo. regarding a December 2008 incident with his spouse. However, the documents are not sufficiently detailed for the Court to discern whether plaintiff's actual conduct involved something more than mere offensive touching so as to deem it morally turpitudinous. In short, the stage two modified categorical approach does not resolve the inquiry.

At step three, the Court may consider any additional evidence appropriate to resolve the moral turpitude question. The Attorney General in *Silva-Trevino* did not elucidate what specifically may be considered at step three, stating only that the purpose of the inquiry is to "ascertain the nature of a prior conviction...not an invitation to relitigate the conviction itself." *Silva-Trevino*, 24 I&N Dec. at 703. Plaintiff contends the police report, offered by the Government, is inadmissible hearsay and inappropriate for consideration on this issue. The Court agrees, because no foundation has been laid for the report's admissibility or veracity and because the circumstances of the incident are hotly contested. Therefore, based on the limited admissible evidence offered at this stage and the administrative directive not to "relitigate the conviction itself," *Id*., the Court concludes that Plaintiff did not plead guilty to a CIMT.

**Unlawful Acts**

The Government's alternative ground is that plaintiff lacks good moral character because he has committed an unlawful act during the statutory period reflecting adversely upon moral character. 8 C.F.R. § 316.10(b)(3)(iii).

In that regard, the USCIS found that the plaintiff lacked good moral character because his domestic assault conviction, regardless of whether it was a crime of moral turpitude and should be classified as a CIMT, constituted an unlawful act within the statutory period for purposes of 8 C.F.R. § 316.10(b)(3)(iii).  The regulations state that if unlawful acts that reflect adversely on moral character are committed during the statutory period and no extenuating circumstances are shown, an applicant "shall be found to lack good moral character."  8 C.F.R. § 316.10(b)(3)(iii).  The word "shall" indicates the regulation is mandatory rather than permissive, that is,  if an applicant's conduct qualifies under the provision, he is barred from establishing good moral character unless extenuating circumstances are shown.  This is so even when the unlawful act would not constitute a CIMT under the regulations.  *See* 8 C.F.R. § 316.10(b)(3)(iii).

"Unlawful acts" is not further defined in the regulations, but the term has been judicially defined as "bad acts that would rise to the level of criminality, regardless of whether a criminal prosecution was actually initiated." *Meyersiek v. USCIS*, 445 F. Supp.2d 202, 205-06 (D. R.I. 2006); *see also United States v. Lekarczyk*, 354 F. Supp.2d 883, 887 (W.D. Wis. 2005) (defining "unlawful" as "illegal or against moral or ethical standards," according to ordinary, dictionary meaning).  Regardless of how it is defined, a guilty plea to third degree domestic assault is clearly an unlawful act.  *See Amin v. I.N.S.*, No. 4:09-CV-623-A, 2010 WL 2034802 at *3-4 (N.D. TX 2010) (affirming USCIS denial of application for naturalization based on a finding that plaintiff's guilty plea to misdemeanor assault causing bodily injury to a family member was an unlawful act for purposes of 8 C.F.R. § 316.10(b)(3)(iii)).  Moreover, such an unlawful act surely is inconsistent with the "standards of the average citizen in the community of residence" imposed under 8 C.F.R. § 316.10(a)(2).

11

However, despite an initial finding that plaintiff's domestic assault incident is an unlawful act, 8 C.F.R. § 316.10(b)(3)(iii) permits plaintiff to make a showing of extenuating circumstances indicating why the unlawful act does not reflect adversely on moral character such to preclude naturalization.  In the context of a determination of good moral character, extenuating circumstances "must pertain to the reasons showing lack of good character, including acts negating good character...." *United States v. Jean-Baptiste*, 395 F.3d 1190, 1195 (11th Cir. 2005). Extenuating circumstances "render a crime less reprehensible than it otherwise would be, or tend to palliate or lessen its guilt." *United States v. Suarez*, 664 F.3d 655, 662 (7th Cir. 2011) (quoting Black's Law Dictionary (6th ed. 1990)).

Plaintiff has had multiple opportunities throughout his application process to offer extenuating circumstances both to USCIS and to this Court.  While he has proffered commendable letters of recommendation and other external post-incident documents attempting to establish his good moral character, none of these purport to show why the domestic assault incident is, in and of itself, "less reprehensible than it otherwise would be...." *Suarez*, 664 F.3d at 662.  Plaintiff's offerings do not qualify as extenuating circumstances under the regulations and thus the Court must conclude that no extenuating circumstances exist.  Because plaintiff has committed an unlawful act within the statutory period and has failed to establish extenuating circumstances, the Court finds that he lacks good moral character pursuant to 8 C.F.R. § 316.10(b)(3)(iii).

In light of the fact that plaintiff has failed to establish good moral character under the INA and that all doubts are to be resolved in favor of the Government, *Fedorenko*, 449 U.S. at 506, the Court finds plaintiff has failed his burden of establishing compliance with all statutory

requirements for naturalization and is ineligible for citizenship at this time.  The Court will grant the defendants' motion to dismiss, or in the alternative for summary judgment.

**SO ORDERED** this 14th day of August, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE